MATHIAS J. RUPPENKAMP et al. *v.* GEORGE
A. BRINKER et al.

[No. 5, January Term, 1932.]

*Decided April 15th, 1932.*

The cause was argued before Bond, C. J., Pattison,
Urner, Adkins, and Digges, JJ.

*Charles G. Watson,* for the appellants.

*A. Taylor Smith* and *Elmer J. Carter,* for the appellees.

Pattison, J., delivered the opinion of the Court.

One George Brinker of Allegany County, Md., died in
the year 1873, leaving a last will and testament by which
he devised unto his widow, Louisa Brinker, his personal
property absolutely, and his real estate, situated in Allegany

County, for and during her natural life, or so long as she might remain a widow, and, after her death, to his son, John Mathias, and his daughter, Sophia, share and share alike.

Sophia Brinker married Joseph H. Ruppenkamp, and on the 10th day of November, 1896, for and in consideration of the sum of ten dollars current money and other good and valuable considerations, paid, by the grantee to the grantors, they conveyed unto John Mathias Brinker, "his heirs and assigns forever in fee simple, all of their right, title and interest at law and in equity" in and to said lands devised unto John Mathias Brinker and his sister, Sophia, by their father, George Brinker. The interest or estate so conveyed by the sister to her brother in the lands mentioned was a one-half undivided interest therein, subject to the life estate of the mother, who died on the 23rd day of April, 1915.

Sophia Ruppenkamp died intestate on or about the 10th day of March, 1921, leaving surviving her as her only heirs at law five daughters and four sons, the appellants; while John Mathias Brinker died in 1924, intestate, leaving as his heirs at law three sons and three daughters, who, with their respective husbands and wives, are the appellees. After the death of John Mathias Brinker, his sons and daughters, the appellees, on the 4th day of June, 1928, executed unto the Liberty Trust Company of Maryland a mortgage conveying the lands described in said deed of November 10th, 1896, to secure an indebtedness of $3,500, which has not been paid; and that company was made a party to these proceedings.

After said conveyance of the 10th day of November, 1896, John Mathias Brinker sold and conveyed to different persons at different times, covering a period of a number of years, parts of the land described in that conveyance. The last of these lots was conveyed on the 31st day of December, 1923. Prior to 1916, he made several sales of lots, each for the sum of $125, and the money received therefor was paid over to Sophia Ruppenkamp. Thereafter he made certain other sales, amounting in the aggregate to $3,500 or more, and the sums received were likewise paid to his sister, Mrs. Ruppen-

kamp. In some of the sales made to the children of Sophia Ruppenkamp of part of the lands in question, John Mathias Brinker directed the purchasers to pay the purchase price therefor to their mother, which was done.

In May, 1930, after the death of John Mathias Brinker, George A. Brinker, his son, sent to each of the nine sons and daughters of Sophia Ruppenkamp a check for the sum of $64.40, upon which was written, "For share in Brinker's estate in full." This, it seems, was not consistent with what the parties, to whom these checks were made payable, understood to be the relation existing between John Mathias Brinker and his sister in respect to the land that was conveyed to him by her and her husband. As a result of this, Sophia Ruppenkamp's children and heirs at law, the appellants, filed their bill against the sons and daughters of John Mathias Brinker, and their respective husbands and wives, the appellees.

In the bill so filed, the facts above stated are alleged, and in addition thereto it was alleged that, at the time of the execution of the deed from Sophia Ruppenkamp and husband to John Mathias Brinker, "it was verbally agreed by and between the said Sophia Ruppenkamp and the said John Mathias Brinker, that the said deed was made in trust for the purpose of making it more convenient for the said John Mathias Brinker to sell parcels of said real estate from time to time and to convey the same to the purchasers; that the said deed was made without consideration paid at the time of executing the same or at any time thereafter, and that the only consideration for the said deed was that the said John Mathias Brinker should make sales of parcels of the said property as he was able to find purchasers and divide the proceeds thereof equally between himself and the said Sophia Ruppenkamp, his sister, after whatever share their mother, who held the life estate therein, was entitled to receive out of said proceeds; and it was understood and agreed between the said John Mathias Brinker and the said Sophia Ruppenkamp, in the said verbal agreement and contract, that her interest should be and remain the same in the said prop-

erty after the execution of the said deed of trust as it was under the will of the said George Brinker, * * * the deed being executed as a deed of trust for the convenience of transferring the parcels of said property and real estate to purchasers thereof from time to time, the said Sophia Ruppenkamp living out in the country on a farm and it being inconvenient for her to come to town every time a deed was required to be executed. That the said deed from Sophia Ruppenkamp to the said John Mathias Brinker, was made in trust and so treated by the said John Mathias Brinker up to the time of his death in 1924." The bill also alleged that John Mathias Brinker in his lifetime sold to John Brinker and to Joseph Brinker valuable lots or parcels of land from this property, for which he received only a nominal sum.

The bill concluded with the prayers (1) that the court decree that the deed from Sophia Ruppenkamp and Joseph Ruppenkamp, her husband, to John Mathias Brinker, dated the 10th day of November, 1896, "was made in trust * * * for the purpose of disposing of the interests of said Sophia Ruppenkamp for her use and benefit"; (2) that the plaintiffs to the bill "are tenants in common with the defendants to the extent of one-half interest of all the lands devised by the last will and testament of George Brinker that has not heretofore been sold by the said George Brinker"; and (3) for general relief.

The defendants filed their answer to the bill. In it they denied that the deed of November 10th, 1896, from Sophia Ruppenkamp and husband to John Mathias Brinker was made in trust, and averred that there is nothing upon the face of the deed or is there anything in the facts and circumstances in connection therewith which shows a creation of a trust. On the other hand, they aver "that said deed was an absolute deed in fee simple and that after the execution of said deed the said Sophia Ruppenkamp had no further interest in the property conveyed thereby or in the proceeds of any sale of any such property." They further denied that the moneys paid to her from the proceeds of lots sold were paid on account of any interest that she had in the real

estate described in said deed, but were, "by mutual agreement, to be applied on account of the balance of the purchase price of the property" described in the deed from her and husband to him in fee simple.

The answer further avers that the checks, each for the sum of $64.40, amounting in the aggregate to $579.60, sent to the appellants, children and heirs at law of Sophia Ruppenkamp, were in payment of the balance of the purchase money for the property conveyed to him by his sister, with interest thereon to the 13th day of May, 1930, the date of the checks.

Evidence was heard by the learned chancellor on the issues joined by the bill and answer, and at its conclusion he passed a decree dismissing the bill. The appeal to this court is from that decree.

It is contended by the appellants that the deed from Sophia Ruppenkamp and her husband to John Mathias Brinker, dated the 10th day of November, 1896, did not convey unto him a fee simple interest in and to the lands therein mentioned and described, but that such interest in the land was conveyed to him in trust. As claimed by the appellants, the land devised to John Mathias and Sophia Brinker by their father was to be sold in lots or parcels. When sold, the proceeds therefrom were to be divided equally between the grantor, Sophia Ruppenkamp, and John Mathias Brinker, and the conveyance to him, appearing on its face to grant an absolute fee simple interest in the property, was made in order to enable him to convey the lots or parcels when sold to the purchasers without the necessity of having her join with him in the conveyances.

There was no express trust in this case, as none was expressly declared by the terms of the deed. If there is a trust at all, it must be an implied or constructive trust. As stated in 1 *Perry, Trusts and Trustees,* sec. 112, "Implied trusts are those that arise when trusts are not directly or expressly declared in terms, but the courts, from the whole transaction and the words used, imply or infer that it was the intention of the parties to create a trust." That author, after

a discussion of express and implied trusts, proceeds to say (section 166) : "The trusts thus far considered arise from the express agreements and intentions of the parties, or from their intentions implied from their agreements, or result from their express or implied agreements. These trusts arise, result, or are implied from the contracts and relations of the parties. The intention of the parties as manifested in contracts made in good faith is the foundation of them. There is another large class of trusts which arise from frauds committed by one party upon another. Thus, if one party procures the legal title to property from another by fraud or misrepresentation or concealment, or if a party makes use of some influential or confidential relation which he holds towards the owner of the legal title, to obtain such legal title from him upon more advantageous terms than he could otherwise have obtained it, equity will convert such party thus obtaining property into a trustee. If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition, or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it or to execute the trust in such manner as to protect the rights of the defrauded party and promote 'the safety and interests of society. Such trusts are called constructive trusts. They differ from other trusts in that they are not within the intention or contemplation of the parties at the time the contract is made from which they are construed by the court, but they are thrust upon a party contrary to his intention and against his consent."

There is nothing in this case from which we may hold that an implied or constructive trust may be said to exist. The

language of the deed is clear and explicit in the grant of a fee simple title. It contains nothing from which any other intention could be found, and there is no proof of any agreement between the parties made at the time of its execution establishing an implied trust, nor are there any existing facts or circumstances upon which a constructive trust could be declared to exist. The allegation of the bill, that it was mutually agreed between the grantors and the grantee that a fee simple title was not to pass under the deed, but that it was executed for the sole purpose of enabling the grantee to convey lots to the purchasers without the necessity of the grantor joining therein, is altogether without proof. The evidence upon which the appellants relied in support of this allegation is that, after the execution of the deed, money arising from the proceeds of the sale of lots forming parts of the land conveyed was directly or indirectly paid by John Mathias Brinker to his sister, Sophia Ruppenkamp, and that, after the death of the latter, John Mathias Brinker's son, George Brinker, sent to each of the appellants a check for $64.40, upon the face of which appeared the words "share in Brinker's estate in full." The fact that John Mathias Brinker paid his sister any part of the proceeds arising from the sale of these lots is not inconsistent with the contention of the appellees that, at the time of the execution of the deed, the full purchase price for the land therein conveyed was not paid by the grantee, and that the payments thereafter made to her from the proceeds of the sale of the property were in payment of the balance of the purchase price. Neither can it be said that the words upon the face of the checks, "share in Brinker's estate in full," were inconsistent with that contention.

If the amount of the checks was the balance owing of the purchase money for Sophia Ruppenkamp's interest in her father's land, which was all she received from his estate, that which had not been paid her in the sale and conveyance of her interest therein to her brother at the time when the checks were given might well have been designated as the "share in Brinker's estate in full."

In the attempted proof of said agreement no witness testified as to its existence. The plaintiffs relied solely upon the facts above stated, which facts utterly failed to establish the existence of such an agreement.

The decree appealed from will be affirmed, with costs to the appellees.

*Decree affirmed, with costs.*